Nicholas S. Cady (OSB # 113463)
Cascadia Wildlands
P.O. Box 10455
Eugene, Oregon 97440
Tel: 541-434-1463
Email: nick@cascwild.org

Meriel L. Darzen (OSB # 113645)
Crag Law Center
3141 E. Burnside Street
Portland, Oregon 97214
Tel: 503-525-2725
Email: meriel@crag.org

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **CASCADIA WILDLANDS**, an Oregon non-profit corporation; and **OREGON WILD**, an Oregon non-profit corporation,<br><br>    Plaintiffs,<br><br>    v.<br><br>**UNITED STATES FOREST SERVICE**, a federal agency,<br><br>    Defendant. | Case No. 6:21-cv-01225-AA<br><br>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Oral Argument Requested<br>Expedited Consideration Requested |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………….….. ii

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

I.    Plaintiffs are Likely to Succeed on the Merits ................................................ 2

    A.   As to the significance of the fires, Defendant failed to make a rational connection between the facts found and the choice made, and offered an explanation that runs counter to the evidence before them. ................................................................................... 2

    B.   Ninth Circuit law requires supplementation where, as here, the change to the project is not a minor variation on an existing alternative and is outside the "spectrum of alternatives" discussed in the EIS. ..................................................................................... 5

    C.   The Court May Consider the Extra Record Evidence Submitted by Plaintiffs ................. 8

    D.   Defendant's Assertion of Deliberative Privilege is Improper .......................................... 10

    E.   The Court May Consider the DellaSala Declaration for Limited Purposes..................... 16

II.    Plaintiffs will suffer irreparable harm absent a preliminary injunction ............................... 17

III.    The Balance of Equities and Public Interest Tip Sharply in Plaintiffs' Favor................. 18

    A.   The Freres, Harrison and Blankenship declarations should be disregarded or accorded minimal weight in the balance of equities. .............................................................. 18

    B.   The Harms to Plaintiffs Outweigh the Alleged Harms to Defendant and the Public Interest Inquiry Tips Sharply in Plaintiffs' Favor.................................................... 18

CONCLUSION..................................................................................................... 21

REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - i

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

# TABLE OF AUTHORITIES

<u>CASES</u>:

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011)........................................................................... 1, 17, 18, 19

*Amoco Prod. Co. v. Vill. of Gambell*,
   480 U.S. 531, 545 (1987)........................................................................................... 19

*Animal Def. Council v. Hodel*,
   840 F.2d 1432 (9th Cir. 1988), *modified*, 867 F.2d 1244 (9th Cir.1989)................................... 4

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*,
   462 U.S. 87 (1983) ...................................................................................................... 2

*Bitterroot Ridge Runners Snowmobile Club v. United States Forest Serv.*,
   833 F.App'x 89 (9th Cir. 2020)..................................................................................... 5

*Blue Mountains Biodiversity Project v. Jefferies*,
   2021 WL 3683879 (D. Or. Aug. 19, 2021) ....................................................... 14, 15

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988). .................................................................................................. 6

*California v. Azar*,
   911 F.3d 558 (9th Cir. 2018)..................................................................................... 19

*Carter v. U.S. DOC*,
   307 F.3d 1084 (9th Cir. 2002)................................................................................... 12

*Cascadia Wildlands v. BLM*,
   No. 6:12-cv-00095-AA, 2012 U.S. Dist. LEXIS 182930 (D. Or. Dec. 21, 2012) ..................... 5

*Center for Biological Diversity v. Bernhardt*,
   2020 WL 1130365 (D. Mont. Mar. 9, 2020)..................................................... 13, 14

*Center for Biological Diversity v. Kempthorne*,
   No. CV 07-0038-PHX-MHM, 2008 WL 659822 (D. Ariz. Mar. 6, 2008)............................... 14

*Consejo de Desarrollo Economico de Mexicali, AC v. United States*,
    438 F. Supp. 2d 1207 (D. Nev. 2006) ........................................................... 9

*Ctr. for Envtl. Health v. Perdue*,
    No. 18-cv- 01763-RS, 2019 U.S. Dist. LEXIS 145073 (N.D. Cal. May 6, 2019) ................... 15

*Cty. of San Miguel v. Kempthorne*,
    587 F. Supp. 2d 64 (D.D.C. 2008) ................................................................ 12, 16

*Desert Survivors v. US Dep't of the Interior*,
    231 F. Supp. 3d 368 (N.D. Cal. 2017) ............................................................ 14, 16

*Dubois v. U.S. Dep't of Agric.*,
    102 F.3d 1273 (1st Cir. 1996) ..................................................................... 7

*Earth Island Inst. v. U.S. Forest Serv.*,
    442 F.3d 1147 (9th Cir. 2006) ..................................................................... 19

*Eugene Burger Mgmt. Corp. v. U.S. Dep't of Hous. & Urban Dev.*,
    192 F.R.D. 1 (D.D.C. 1999) ..................................................................... 12, 16

*Firebaugh Canal Water Dist. v. United States*,
    2010 U.S. Dist. LEXIS 97707, 2010 WL 3702664 (E.D. Cal. Sept. 17, 2010) ........................ 9

*Fishermen's Finest, Inc. v. Gutierrez*,
    No. C07-1574MJP, 2008 U.S. Dist. LEXIS 53493 (W.D. Wash. July 15, 2008) ................... 14

*Friends of the Clearwater v. Dombeck*,
    222 F.3d 552 (9th Cir. 2000) ..................................................................... 9

*Hronek v. Drug Enf't Agency*,
    16 F. Supp. 2d 1260 (D. Or. 1998) ................................................................ 11

*In re United States*,
    875 F.3d 1200 (9th Cir. 2017) ..................................................................... 13

*Inland Empire Pub. Lands Council v. Glickman*,
    88 F.3d 697 (9th Cir. 1996) ..................................................................... 10

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ................................................................ 10

*Kee v. United States*,
   168 F.3d 1133 (9th Cir. 1999) ................................................................ 8

*Kootenai Tribe of Idaho v. Veneman*,
   313 F.3d 1094 (9th Cir. 2002) ................................................................ 20

*Lands Council v. Forester of Region One of the United States Forest Serv.*,
   395 F.3d 1019 (9th Cir. 2004) ................................................................ 17

*Lands Council v. McNair*,
   537 F.3d 981 (9th Cir. 2008) ................................................................ 4

*League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Connaughton*,
   752 F.3d 755 (9th Cir. 2014) ................................................................ 19

*Marlar, Inc. v. United States*,
   151 F.3d 962 (9th Cir. 1998) ................................................................ 8

*Marsh v. Oregon Nat. Res. Council*,
   490 U.S. 360 (1989). ................................................................ 4, 7

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................ 4

*N.M. ex rel. Richardson v. BLM*,
   565 F.3d 683 (10th Cir. 2009) ................................................................ 7

*Nat. Res. Def. Council v. Gutierrez*,
   No. C 01-0421 JL, 2008 WL 11358008 (N.D. Cal. Jan. 14, 2008) ................................ 15

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
   861 F.2d 1114 (9th Cir. 1988) ................................................................ 11, 12, 13

*Native Ecosystems Council v. Tidwell*,
   599 F.3d 926 (9th Cir. 2010) ................................................................ 5

REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - iv

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

*Nw. Envtl. Advocs. v. EPA,*
 No. CIV 05-1876-HA, 2008 WL 111054 (D. Or. Jan. 7, 2008) .................................. 11, 12, 13

*Nw. Envtl. Advocs. v. EPA,*
 No. CIV 05-1876-HA, 2009 WL 349732 (D. Or. Feb. 11, 2009)................................. 11, 12 14

*Oceana, Inc. v. Ross,*
 920 F.3d 855 (D.C. Cir. 2019) ............................................................................... 15

*Oregon Natural Desert Ass'n v. BLM,*
 531 F.3d 1114 (9th Cir. 2008)................................................................................. 15

*Portland Audubon Soc. v. Endangered Species Comm.,*
 984 F.2d 1534 (9th Cir. 1993) ................................................................................. 9

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.,*
 No. C 17-05211 WHA, 2017 WL 4642324  (N.D. Cal. Oct. 17, 2017) .............................. 9, 15

*Russell Country Sportsmen v. U.S. Forest Service*
 668 F.3d 1037 (9th Cir. 2011).................................................................. 1, 5, 6, 7

*S. Fork Band Council v. U.S. Dep't of Interior,*
 588 F.3d 718 (9th Cir. 2009)................................................................................... 19

*S.W. Ctr. for Biological Diversity v. U.S. Forest Serv.,*
 100 F.3d 1443 (9th Cir. 1996)................................................................................. 10

*San Luis & Delta-Mendota Water Auth. v. Locke,*
 776 F.3d 971 (9th Cir. 2014)................................................................................... 17

*Save Our Sonoran, Inc. v. Flowers,*
 408 F.3d 1113 (9th Cir. 2005)................................................................................. 19

*Save the Colorado v. U.S. Dep't of the Interior,*
 517 F.Supp.3d 890 (D. Ariz. 2021) ............................................................... 14, 15, 16

*Seattle Audubon Soc'y v. Evans,*
 771 F.Supp. 1081 (W.D. Wash. 1991), *aff'd*, 952 F.2d 297 (9th Cir. 1991) .................... 18, 20

REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - v

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

*Sierra Club v. Zinke*,
   No. 17-cv-07187-WHO, 2018 U.S. Dist. LEXIS 107682 (N.D. Cal. June 26, 2018) ............. 14

*Stop B2H Coal. v. BLM*,
   No. 2:19-cv-1822-SI, 2021 U.S. Dist. LEXIS 145939 (D. Or. Aug. 4, 2021) ......................... 10

*Thompson v. United States Dep't of Labor*,
   885 F.2d 551 (9th Cir. 1989) ....................................................................................................... 9

*Tri-Valley Cares v. United States DOE*,
   671 F3d 1113 (9th Cir. 2012) ...................................................................................................... 2

*Wilderness Soc'y v. Tyrrel*,
   701 F. Supp. 1473 (E.D. Cal. 1988) ......................................................................................... 18

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008) ................................................................................................................. 2, 18

*Wisconsin v. Weinberger*,
   745 F.2d 412 (7th Cir. 1984) ....................................................................................................... 2

Statutes

42 U.S.C. §§ 4321–4370h ................................................................................................................. 1
5 U.S.C. § 552, as amended. .......................................................................................................... 10

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

## INTRODUCTION

This case challenges a new tactic by the United States Forest Service ("Defendant") to skirt its National Environmental Policy Act ("NEPA") obligations following large fires that burn through unimplemented timber sales. 42 U.S.C. §§ 4321–4370h. Instead of addressing the vast changes to the landscape and projects, the agency is simply shoehorning salvage logging into existing, pre-fire NEPA decisions to assuage timber companies chomping at the bit for timber volume. This court should not allow the agency to proceed with this tactic because it violates NEPA, because it will cause immediate harm to Cascadia Wildlands and Oregon Wild ("Plaintiffs"), and because it sets a dangerous precedent of post-fire timber grabs without any environmental disclosure or consideration.

Defendant's opposition brief does little more than double down on the unsupported conclusions made in the SIRs, admitting significant changed circumstances resulting from the fires, but then ignoring those when making its determination of non-significance. Defendant also entirely fails to grapple with the Ninth Circuit's test in *Russell Country Sportsmen v. U.S. Forest Service* ("*Russell Country*"), which requires a new analysis or supplementation unless a project change is a minor variation or within the spectrum of alternatives previously considered. 668 F.3d 1037, 1045 (9th Cir. 2011). There can be no dispute that post-fire salvage logging is not within the realm of alternatives considered for either the Hwy 46 or Lang Dam projects, which analyzed treating live trees. As a result, supplementation was required, and Plaintiffs are likely to succeed on this issue.

As to harm, Defendant fails to acknowledge the rule set out in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("*Cottrell*"), which flatly rejected Defendant's argument that because only a fraction of the burned trees are being treated Plaintiffs have not satisfied irreparable harm. As in *Cottrell*, Plaintiffs here use and enjoy the "areas subject to logging," making this an "actual and irreparable injury," which satisfies the "likelihood of irreparable injury" requirement articulated in *Winter*. *Id*. Defendant also strongly contests the extra-record material submitted by Plaintiffs, but then submits their own non-party

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

declarations from three timber company executives to support its positions. These declarations should be given minimal, if any, weight.

Because logging is imminent, Plaintiffs ask the Court to issue a preliminary injunction to preserve the *status quo* pending resolution of the case, thereby minimizing harm to Plaintiffs' interests.

A preliminary injunction is appropriate because (1) Plaintiffs are likely to succeed on the merits, (2) they will suffer irreparable harm if the Forest Service and contractor(s) proceed with the imminent logging in the Hwy 46 Project and potentially imminent logging in the Lang Dam project in the absence of an injunction, (3) the balance of equities tips sharply in Plaintiffs' favor, and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)

## ARGUMENT

### I.    Plaintiffs are Likely to Succeed on the Merits

#### A.  As to the significance of the fires, Defendant failed to make a rational connection between the facts found and the choice made, and offered an explanation that runs counter to the evidence before them.

Defendant agrees that the court must determine whether it "articulated a rational connection between the facts found and the choice made." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 105 (1983). But its brief demonstrates the agency's failure to do so, showing "a clear error in judgment," and failure to consider an important aspect of the problem. *Tri-Valley Cares v. United States DOE*, 671 F3d 1113, 1124 (9th Cir. 2012). As the agency's own documents admit, the fires had drastic effects on the landscape, including within the project areas for Hwy 46 and Lang Dam, and specifically within the logging units in those projects. *See* ECF 18-1; 18-2; 18-8 at 94-95. Accordingly, the fire is new information that "presents a seriously different picture of the environmental landscape," but Defendant was so determined to let logging move forward, it ignored the evidence before it and made an irrational decision. *Tri-Valley Cares*, 671 F3d at 1130 (citing *Wisconsin v. Weinberger*, 745 F.2d 412, 418 (7th Cir. 1984)).

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION- 2

Defendant does not dispute that the fire changed conditions in the project areas. Defs. Br. at 28 ("changed post-fire conditions"), ECF 18-6 at 1 (1,609 acres out of 2,181 proposed for treatment were burned, or 74% of the project acres). Instead, Defendant argues its decision should stand because the agency "made a careful determination that it could move forward with the Project[s] while keeping post-fire effects within the previously analyzed range." Defs. Br. at 29. But Defendant conflates the purposes for the SIR in this case: the SIR was supposed to address two, separate but related, reasons for potential supplementation: 1) the fire and its changes to the landscape in the project areas, and 2) the changes to the projects themselves. For the former, a SIR analysis cannot "keep the effects within the previously analyzed range." Regardless of how Defendant ultimately modified the project, the effects of the fire are either significant new information or they are not. And here, as Defendant admits, and its own documents show, the fire changed the landscape significantly, including within the project units, in a manner that was never analyzed in the original EIS. ECF 18-1 at 1-6, 18-2 at 2-6.

For example, the Hwy 46 SIR acknowledges "[n]either impairment of spotted owl territories or incidental take of northern spotted owls is considered in the FEIS or in the consultation for the project and *would represent significant new information.*" ECF 18-6 at 2 (emphasis added). But the SIR also discloses that the fire itself impaired owl territories to the point that they are "no longer viable," and "removed substantial suitable habitat in the Hwy 46 project area." *Id. See also id.* at 4 ("Due to a loss of suitable habitat from the fires, six historic northern spotted owl home ranges that overlap with the project area . . . are no longer considered viable territories."). Defendant nonetheless argues that the fire was insignificant, and no supplementation was required. This complete disconnect between the facts the agency found (impairment of owl territories is significant, and the fire impaired and even destroyed multiple owl territories) and the choice made (no new analysis needed) is the embodiment of arbitrary and capricious agency action. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

U.S. 29, 43, 103 S. Ct. 2856, 2867 (1983).[1] Similar unsupported conclusions were made

regarding hydrology (ECF 18-6 at 7 (SIR acknowledging that the fire's effect on tree canopy will

increase stream temperatures, undermining the Hwy 46 EIS provision of maintaining 40 percent

canopy cover threshold but concluding no new information)), and invasive plants (*Id*. at 11

(acknowledging that fire had unknown effect on noxious weeds in treatment units and that they

could have "increased significantly" but declining to consider the issue further)).

    Similarly for Lang Dam, although there is minimal disclosure of changed circumstances

from the fire in the SIR itself, the Hydrologist's Supplemental Report (ECF 18-8 at 33-36) notes:

> "Field reconnaissance in the fire area has shown that in areas of moderate and
> high severity burns, the understory, duff layer and existing downed wood have
> been, for the most part, lost. The resulting exposed soil would increase the
> likelihood of detrimental soil compaction and increase sediment transport to
> streams related to ground-based harvest operations in Riparian Reserves beyond
> what was analyzed in the Lang Dam EA. There are likely to be short-term (1-5
> years) increases in discharge and sediment transport due to the effects of the fire
> alone, and harvest operations could cumulatively add to those effects. Water
> temperature will also be impacted by the reduction in shade cause by near stream
> tree mortality…. In consideration of this new information, *it is my determination*
> *that a changed condition now exists in Riparian Reserves in these fire affected*
> *units.*"

(emphasis added). Yet the Lang Dam SIR concludes "the interdisciplinary team confirmed that

the resources concerns could be mitigated by the following project design adjustments to stay

within analysis completed in the Lang Dam EA." ECF 22-3 at 11. But Defendant's proposed

"mitigation" has no bearing on whether the fires were significant new information and created

changed circumstances within the project area. Rather, the agency's explanations for failing to

supplement both the Hwy 46 and Lang Dam projects to assess the fire's significant new

information and changed circumstances "run counter to the evidence before it," and

---

[1] Defendant argues that a hard look is not required as part of a SIR, citing *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 374, 109 S. Ct. 1851, 104 L. Ed. 2d 377 (1989). Defs. Br. at 27, n. 12. But *Marsh* specifically provides that the agency has a "continuing obligation to take a 'hard look' at the environmental effects of its planned action even after a proposal has received initial approval." *Id*. And, even if "hard look" is not the exact phrase, a similar level of review is required for a SIR. When new information surfaces, an agency may satisfy NEPA by "carefully consider[ing] the information, evaluat[ing] its impact, and support[ing] its decision not to supplement . . . with a statement of explanation or additional data." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1439-40 (9th Cir. 1988), *modified*, 867 F.2d 1244 (9th Cir.1989).

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

supplementation is required. *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008), *overruled on other grounds by Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7 (2008) (court will reverse a decision where agency "offered an explanation that runs counter to the evidence" before it.). *See also Cascadia Wildlands v. BLM*, No. 6:12-cv-00095-AA, 2012 U.S. Dist. LEXIS 182930, at *33 (D. Or. Dec. 21, 2012) ("the FWS' finding that the vole is warranted for listing under the ESA undermines the BLM's argument that vole populations in the project area are healthy and well-distributed," and thus warrants supplementation); *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 937 (9th Cir. 2010) (the existing EA is "predicated on the assumption that no nesting habitat existed in the project area," which was contradicted by new information). At bottom, Defendant ignored the evidence demonstrating that the fire had substantially changed the landscape, and made an unsupported, irrational determination that supplementation was not required.  Plaintiffs are likely to succeed on this claim.

**B.  Ninth Circuit law requires supplementation where, as here, the change to the project is not a minor variation on an existing alternative and is outside the "spectrum of alternatives" discussed in the EIS.**

The Ninth Circuit has adopted a test for whether a change to a proposed action requires supplementation. *Russell Country*, 668 F.3d at 1045. *See also Bitterroot Ridge Runners Snowmobile Club v. United States Forest Serv.*, 833 F.App'x 89, 91 (9th Cir. 2020) (describing *Russell Country* as "precedent" with respect to the test for requiring supplementation). *Russell Country* provides that supplementation is necessary unless two requirements are satisfied: (1) the new alternative is a "minor variation of one of the alternatives discussed in the draft EIS," and (2) the new alternative is "qualitatively within the spectrum of alternatives that were discussed in the draft [EIS]." 668 F.3d at 1045. Defendant patently ignores this test in its attempt to justify its failure to supplement the NEPA for the Hwy 46 and Lang Dam projects, because it cannot meet either prong.[2] Defendant admits "the combination and scope of treatment types required to meet

_____

[2] Defendant declines to address the merits of Plaintiffs' claim regarding the Lang Dam project, arguing that imminent harm cannot be demonstrated because work will not begin before May 2022. But given Defendant's position that timber sales, contracts, prescription and

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION- 5

[the goals of the Hwy 46 project] *necessarily differs* in burned areas following the fire." Defs. Br. at 23 (emphasis added). It claims, however, that it is home free because "the IDT's recommendations are within the scope and effects of the Hwy 46 Project as previously analyzed." Defs. Br. at 24. But that is simply not the test articulated in *Russell Country*. Nowhere in the SIR or even in the briefing does Defendant explain how salvage logging is a minor variation of one of the alternatives considered in either the Hwy 46 or Lang Dam analyses, or is qualitatively within the spectrum of the alternatives discussed.[3]

Defendant argues that the changes from green-tree logging to salvage are not "wholesale" or "substantial" changes to the Project because it will allegedly further *some* of the same goals articulated in the original Project analysis (while conceding that it no longer furthers others, Defs. Br. at 26; *see also* Rivera Decl. (ECF 22-4) at 8).[4] But again, the overarching question that Defendant fails to address is whether the project changes are within the scope (or "spectrum") of alternatives originally analyzed. *Russell Country*, 668 F.3d at 1045. The fact that the changed project no longer meets some of the Project's original goals is evidence that it cannot meet the *Russell Country* test; in the Hwy 46 ROD, the agency specifically noted that it was dropping treatments in small areas that had been burned in an earlier fire because that fire had already created early seral habitat (one of the Project's goals). ECF 14 at ¶ 16, ECF 18-4 at 16. These more recent fires have similarly created early seral habitat, and logging is no longer necessary to accomplish this goal.

More specifically, the Forest Service alleges that the change from green-tree to post-fire salvage logging is within the scope of alternatives previously analyzed because even though it no

---

implementation can change at any time without supplementation (Defs. Br. at 24), and that Defendant has previously acted on this position, salvage logging over 200 acres in the Lang Dam project without updating NEPA or providing notice, imminent harm is likely and a preliminary injunction is warranted.

[3] The alternatives considered in the Hwy 46 FEIS are summarized at ECF 18-3 at 17. The alternatives considered in the Lang Dam EA are summarized at ECF 18-9 at 20-21.

[4] These arguments, particularly those made in the Rivera and Cross declarations are post-hoc rationalization that the court should disregard. "Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 213 (1988).

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION- 6

longer furthers the Project goal for riparian reserves, it furthers the Project's other goals of "reducing hazardous fuel loads," and "mov[ing] stand structure from an overabundance of mid-seral stands to increase early and late seral stand structure." Defs. Br. at 23. But even if salvage logging could somehow further an original project goal in a meaningful way,[5] the Court should accord that argument minimal weight in consideration of whether the change to salvage is "a minor variation" or whether that brings the change "qualitatively within the spectrum of alternatives that were discussed," because the agency is asking to Court to apply the wrong standard. And regardless of the agency's stated goals, as Defendant admits that "the combination and scope of treatment types required to meet these goals necessarily differs in the burned areas following the fire," salvage was not a minor variation on any previously considered alternative, and supplementation was required under *Russell Country*.

Defendant also argues that their newly added project design features bring the new salvage treatments within the scope of the original analysis. Defs. Br. at 26, 28. But, as the Tenth Circuit aptly described in *N.M. ex rel. Richardson v. BLM*, 565 F.3d 683, 707 (10th Cir. 2009):

> We would not say that analyzing the likely impacts of building a dirt road along the edge of an ecosystem excuses an agency from analyzing the impacts of building a four-lane highway straight down the middle, simply because the type of impact--habitat disturbance--is the same under either scenario. *See, e.g., Dubois v. U.S. Dep't of Agric.*, 102 F.3d 1273, 1291-92 (1st Cir. 1996) (holding that a supplement was required where the adopted alternative "entail[ed] a different configuration of activities and locations, not merely a reduced version of a previously-considered alternative"). . . . NEPA does not permit an agency to remain oblivious to differing environmental impacts, or hide these from the public, simply because it understands the general type of impact likely to occur. Such a state of affairs would be anathema to NEPA's 'twin aims' of informed agency decisionmaking and public access to information. *See Marsh*, 490 U.S. at 371.

Here, a switch from green-tree thinning to post-fire salvage logging of dead and dying trees is akin to a switch from building a road outside a park to building one straight through the

---

[5] Plaintiffs entirely dispute the agency's assertion that post-fire salvage logging "move[s] stand structure from an overabundance of mid-seral stands to increase early and late seral stand structure." Defs. Br. at 26. *See* ECF 16-2 at 7 (Decl. DellaSala). And Defendant admitted in the Hwy 46 ROD that it does not. See ECF 18-4 at 16.

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

park; regardless of the similarity of the level of impacts, the new action is "an entirely different configuration of activities" and requires supplementation. *Dubois*, 102 F.3d at 1291-92.

Defendant also makes an odd argument that changes to timber sales and contracts are not relevant to whether the Project has been changed because "neither the Project FEIS nor the RODs approving the Hwy 46 Project authorized individual timber sale contracts or specific treatments in specific units." Defs. Br. at 24. In fact, that is exactly what the Hwy 46 RODs did: they authorized specific treatments in specific units. See ECF 18-4 (Hwy 46 2nd ROD) at 10-11 ("allowing" specific treatments in specific units). And a ROD that did not authorize any specific treatments would be essentially meaningless – a decision authorizing nothing, or everything, depending on what the Forest Service later decides it wants to do. That scenario would be antithetical to NEPA's goals of disclosure and public participation and would yield absurd results. Under Defendant's theory, a court could find that because a project's goal is to generate energy an agency could switch from a solar facility to a coal-fired power plant, because both accomplish the same goal, without any further analysis. This cannot have been Congress's intent behind giving agencies the duty to supplement. *See Marlar, Inc. v. United States*, 151 F.3d 962, 969 n.13 (9th Cir. 1998) (noting that "statutes should be interpreted so as to avoid patently absurd results"). *See also Kee v. United States*, 168 F.3d 1133, 1136-37 (9th Cir. 1999). Defendant has failed to comply with its NEPA duties, and Plaintiffs have demonstrated likelihood of success on this claim.

In short, pursuant to the caselaw explained above, federal agencies are not permitted to change green-tree thinning projects to post-fire salvage logging without supplementing NEPA. Permitting such behavior by the Forest Service would open the door to wholesale project changes after the completion of NEPA without public input or feedback or consideration of environmental impacts. This contravenes NEPA.

### C. The Court May Consider the Extra Record Evidence Submitted by Plaintiffs

Defendant spends a substantial portion of its response brief arguing that Plaintiffs rely on improper extra-record materials to support their arguments. Defs. Br. at 13. In doing so,

Defendant at the outset misrepresents what the Court may consider, especially when Plaintiffs are bringing a "failure to supplement" NEPA claim.

Under the APA, a court reviewing an agency's decision is instructed to "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. "The whole record" is "everything that was before the agency pertaining to the merits of its decision," *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993), which includes "all documents and materials directly or indirectly considered by agency decision-makers [including] evidence contrary to the agency's position." *Thompson v. United States Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citations omitted); *see also Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, No. C 17-05211 WHA, 2017 WL 4642324, at *2 (N.D. Cal. Oct. 17, 2017) (the "whole record" includes "documents that literally passed before the eyes of the final agency decision maker but also documents that were considered and relied upon by subordinates who provided recommendations." (internal quotation marks omitted)).

When Plaintiffs are bringing a "failure to supplement" NEPA claim, the scope of the administrative record is increased. As the District Court of Oregon recently articulated:

> When a plaintiff moves under NEPA to compel the government to prepare an SEIS, the Ninth Circuit has held that such a claim is under 5 U.S.C. § 706(1), and a court is not limited to reviewing only the administrative record. *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000). As explained by the Ninth Circuit in rejecting the plaintiff's argument that extra-record materials could not be considered under these circumstances:
>
>> [The plaintiff's] argument reflects confusion between lawsuits that challenge the propriety of a final agency action, and suits that are brought to compel an agency to act in the first instance. When a plaintiff challenges a final agency action, judicial review normally is limited to the administrative record in existence at the time of the agency's decision. In these cases, the agency must justify its final action by reference to the reasons it considered at the time it acted. An action to compel an agency to prepare an SEIS, however, is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1), to compel agency action unlawfully withheld or unreasonably delayed. In such cases, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.
>
> *Id.* (quotation marks and citations omitted); *see also Firebaugh Canal Water Dist. v. United States*, 2010 U.S. Dist. LEXIS 97707, 2010 WL 3702664, at *10 (E.D. Cal. Sept. 17, 2010) (allowing the plaintiffs' extra-record materials based on *Dombeck*); *Consejo de Desarrollo Economico de Mexicali, AC v. United States*, 438 F. Supp. 2d 1207, 1221-22 (D. Nev. 2006), *vacated and remanded on*

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

*other grounds sub nom. Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157 (9th Cir. 2007) ('Because the remaining claims are actions to compel agency action unlawfully withheld, the Court will not limit its review to the Administrative Record and instead will consider materials submitted by Plaintiffs as they relate to the present matter.').''

*Stop B2H Coal. v. BLM*, No. 2:19-cv-1822-SI, 2021 U.S. Dist. LEXIS 145939, at *13-15 (D. Or. Aug. 4, 2021). Because this case is similarly a motion to compel agency action unlawfully withheld, the Court here is well within its authority to consider the materials submitted by Plaintiffs as they relate to the present matter.

Furthermore, this is a motion for a preliminary injunction, and thus the Court enjoys additional leeway in consideration of materials. The Ninth Circuit has repeatedly considered extra-record declarations in its analysis of whether a plaintiff has demonstrated the likelihood that it will suffer irreparable harm without a stay. *See e.g. Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Additionally, to show the movant's likelihood of the success on the merits, courts can consider declarations in four circumstances:

> (1) if necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) "when the agency has relied on documents not in the record,' [] (3) "when supplementing the record is necessary to explain technical terms of complex subject matter,". . . . [or] [4] "when plaintiffs make a showing of agency bad faith."

*S.W. Ctr. for Biological Diversity v. U.S. Forest Serv.,* 100 F.3d 1443, 1450 (9th Cir. 1996) (*quoting Inland Empire Pub. Lands Council v. Glickman*, 88 F.3d 697, 703-04 (9th Cir. 1996)). Thus, the Court is entitled to rely on any of the declarations submitted by Plaintiffs for any of the above purposes.

### D.  Defendant's Assertion of Deliberative Privilege is Improper

Defendant contends that the Court is not allowed to consider "deliberative materials," which it describes as "internal agency notes, meeting minutes, emails," "drafts" including draft versions of the Lang Dam SIR, and other documents relied upon by the agency in formulating the SIRs. Defs. Br. at 17-19. The materials in question were obtained from Defendant in response to Plaintiffs' Freedom of Information Act ("FOIA") request of May 27, 2021. 5 U.S.C. § 552, as amended. Defendant's argument is undermined by the fact that the agency already

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

produced these documents, and it does not align with the Ninth Circuit's definition of the "whole record" and the vast majority of district court cases from this Circuit.

As an initial matter, the Forest Service cannot establish that the deliberative process privilege applies by simply making a broad assertion[6] regarding documents obtained from Plaintiffs' FOIA request. This Court has recognized that "[t]he government bears the initial burden of establishing that the privilege applies[.]" *Nw. Envtl. Advocs. v. EPA,* CIV 05-1876-HA, 2008 WL 111054, at *4 (D. Or. Jan. 7, 2008). Privileges may be asserted and supported by providing a privilege log or detailed declarations that explain the reasons for withholding documents from the record; such logs or declarations aid the court in determining whether the documents were properly withheld. *See Hronek v. Drug Enf't Agency,* 16 F. Supp. 2d 1260, 1275, 1280 (D. Or. 1998) (observing that defendant's submissions "lack the specificity necessary to permit plaintiff (or the court) to question the agency's conclusion [regarding exempted documents]" and requiring the agencies to resubmit detailed declarations and log) (parenthetical in original). Defendant here still has not produced an administrative record, much less a privilege log, but has proactively declared that all these emails, drafts, memos, and meeting minutes will not be included within the administrative record. ECF 22 at 18.

In any case, the FOIA documents are not "deliberative." The deliberative process privilege "is a common-law privilege that has been incorporated into Exemption 5 of [FOIA]" *Nw. Envtl. Advocs. v. EPA*, No. CIV 05-1876-HA, 2009 WL 349732, at *3, n.1 (D. Or. Feb. 11, 2009). The deliberative process privilege "shields from public disclosure confidential inter-agency memoranda on matters of law or policy." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988). The purpose of the privilege is to promote sound governmental decision-making where, "[b]y maintaining the confidentiality of the give-and-take that occurs among agency members in the formulation of policy, the deliberative process privilege . . .

---

[6] The Forest Service cites large portions of Plaintiffs' brief and labels it "deliberative." Defs. Br. at 27-28.

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

encourages frank and open discussions of ideas, and, hence, improves the decisionmaking process." *Id.* at 1117.

In order to be withheld, "a document must be *both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Id.* (emphasis in original). "A document is only 'deliberative' if its disclosure would frustrate the purposes of the privilege." *Nw. Envtl. Advocs.*, 2009 WL 349732 at \*19 (citing *Carter v. U.S. DOC*, 307 F.3d 1084, 1089 (9th Cir. 2002)).

The Forest Service has already disclosed these documents to Plaintiffs through its FOIA production, and this was done after the initiation of this suit. In doing so, Defendant waived any alleged deliberative process privilege that it did not assert at that time. "[W]hile an agency generally is entitled to protect information that exposes their decisionmaking processes, and exclude them from the administrative record, by producing these documents pursuant to the FOIA request, the Service has waived any privilege and protection from disclosure[.]" *Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 75 (D.D.C. 2008) (internal quotation and citations omitted); *see also Eugene Burger Mgmt. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, 192 F.R.D. 1, 5 (D.D.C. 1999) (noting that an otherwise protected document loses protection of the deliberative process privilege if "the agency used the document in its dealings with the public"). This waiver rule is consistent with the purpose of the deliberative process privilege: to shield an agency's internal decision-making process from public scrutiny. If the agency failed to withhold the documents under the claim of deliberative process privilege during the FOIA response process, there is no longer any confidentiality concern, and the Forest Service cannot belatedly claim privilege now. *Nw. Envtl. Advocs.*, 2009 WL 349732, at \*6 (disclosing via FOIA "rendered these documents no longer deliberative (assuming they were deliberative in the first place) because disclosure would no longer 'frustrate the purposes of the privilege.'").

Additionally, here, the Forest Service could have easily sought to withhold the allegedly deliberative documents under Exemption 5 during the FOIA process, as it did for other documents and portions of documents which Plaintiffs have yet to review. *See* Darzen Decl. Ex. A ("After reviewing the documents, we have determined that 884 pages can be released in full;

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

462 pages can be released in part with some information redacted pursuant to Exemptions 4, 5, and 6; and 25 pages will be withheld pursuant to Exemption 5."). *See also* ECF 18-8 at 4 (showing redaction for deliberative process).

The Forest Service had ample opportunity and ability to withhold documents as deliberative during the FOIA response process, yet it chose not to. The purpose of the deliberative process privilege is to "shield[] from public disclosure confidential inter-agency memoranda on matters of law or policy[.]" *Nat'l Wildlife Fed'n,* 861 F.2d at 1116. That purpose is not served by excluding from the administrative record documents that have already been publicly disclosed via FOIA. Confidentiality concerns are simply not implicated in such a situation. By providing the FOIA documents to Plaintiffs as responsive to the FOIA request, the Forest Service has already waived any alleged deliberative process privilege as to those documents. In doing so, it rendered these documents no longer deliberative (assuming they were deliberative in the first place) because disclosure would no longer "frustrate the purposes of the privilege." *Nw. Envtl. Advocs.*, 2009 WL 349732 at *19. Here, "disclosure" via the administrative record would not frustrate the purpose of the privilege because the confidentiality of these documents has already been compromised.

Even if these documents are considered deliberative, the vast majority of cases in the Ninth Circuit have held that courts are allowed to consider deliberative materials. The Ninth Circuit Court of Appeals has not directly addressed whether "deliberative" materials can be excluded from the administrative record, although in *In re United States* it held that the district court's decision to require a privilege log and evaluate claims of privilege before including deliberative documents "in the record was not clearly erroneous as a matter of law." 875 F.3d 1200, 1210 (9th Cir. 2017). In *Center for Biological Diversity v. Bernhardt*, the court explained that:

> Without the benefit of Ninth Circuit precedent, the Court is convinced that the better view is that the "whole record" includes deliberative materials that were "directly or indirectly considered by agency decision-makers." When tasked with review of an agency decision under the APA, it is essential that the Court understand the agency's reasons for its decision. This includes the agency's stated reasons but may also include draft or deliberative documents exchanged in the course of reaching a decision.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION- 13

2020 WL 1130365, at *2-4 (D. Mont. Mar. 9, 2020) (citations omitted). The court went on to

explain that:

> "[U]nder some circumstances, predecisional deliberative communications may go to the heart of the question of whether an agency action was arbitrary and capricious, an abuse of discretion or otherwise inconsistent with the law[.]" *Desert Survivors v. US Dep't of the Interior*, 231 F. Supp. 3d 368, 382 (N.D. Cal. 2017). For example, in the environmental context, where a regional agency receives instruction from Washington to justify a decision that has already been made on policy grounds before a meaningful review of a proposed action has taken place, *see Center for Biological Diversity v. Kempthorne*, No. CV 07-0038-PHX-MHM, 2008 WL 659822 (D. Ariz. Mar. 6, 2008), evidence of such correspondence is equivalent to a "smoking gun" because it indicates that a decision was improper. *Desert Survivors*, 231 F. Supp. 3d at 382.

*Id.* at *8-9.

This is precisely what the deliberative communications here revealed: that District

Ranger Darren Cross decided to use a SIR and then ordered his employees to paper over the

differences or "change the project the way we need to meet NEPA obligations." *See* Plaintiffs

Op. Br. at 25-26 (citing Ex. H).

Defendant's brief relies on two very recent and ongoing cases for its position that

deliberative materials should be excluded. It cites *Blue Mountains Biodiversity Project v.

Jefferies*, 2021 WL 3683879 (D. Ore. Aug. 19, 2021) and *Jefferies*, in turn, relies on *Save the

Colorado v. U.S. Dep't of the Interior*, 517 F.Supp.3d 890 (D. Ariz. 2021), the only in-circuit

case cited therein. *Save the Colorado* departs from precedent set by district courts in the Ninth

Circuit and the broad definition of "whole record" adopted by the Ninth Circuit, instead adopting

a rationale from the D.C. District. *See id.* at 896-97 (explicitly looking to D.C. Circuit caselaw).

Aside from these two district court decisions, courts within the Ninth Circuit have

consistently found that not only are deliberative materials appropriately part of the administrative

record but are in fact crucial pieces of the record by which to review agency. *See, e.g.,

Bernhardt*, 2020 WL 1130365, at *2-4; *Sierra Club v. Zinke*, No. 17-cv-07187-WHO, 2018 U.S.

Dist. LEXIS 107682, at *10 (N.D. Cal. June 26, 2018) ("This district has repeatedly required

deliberative materials (such as internal comments, draft reports, emails, and meeting notes) to be

added to the administrative record if they were considered in the agency's decision."); *Nw. Envtl.*

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

*Advocates*, No. 05-1876-HA at *23 (ordering the agency to include in the record numerous documents withheld as deliberative); *Fishermen's Finest, Inc. v. Gutierrez*, No. C07-1574MJP, 2008 U.S. Dist. LEXIS 53493, at *14 (W.D. Wash. July 15, 2008) (same). In contrast, the D.C. Circuit has reached a different conclusion. *See Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019). District courts in the Ninth Circuit have correctly held that the D.C. Circuit's "reasoning is unpersuasive here in light of Ninth Circuit's broad definition of the 'whole record.'" *Ctr. for Envtl. Health v. Perdue*, No. 18-cv- 01763-RS, 2019 U.S. Dist. LEXIS 145073 *7 n.4 (N.D. Cal. May 6, 2019).

Because the administrative record must include materials indirectly considered by agency decisionmakers, it "naturally encompasses the underlying work and recommendations of agency subordinates." *Nat. Res. Def. Council v. Gutierrez*, No. C 01-0421 JL, 2008 WL 11358008, at *6 (N.D. Cal. Jan. 14, 2008) (internal citations omitted); *see also Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.,* No. C 17-05211 WHA, 2017 WL 4642324, at *2 (N.D. Cal. Oct. 17, 2017) (explain that the "whole record" includes "documents that literally passed before the eyes of the final agency decision maker but also documents that were considered and relied upon by subordinates who provided recommendations." (internal quotation marks omitted)).

The documents that Defendant states the Court should not consider are precisely these types of materials. They include meeting minutes, drafts, comments, and emails where issues of significance, purpose and need, and the impacts of the fires are discussed. *See* ECF 18-8.  These documents reveal that the agency initially decided to use a SIR due to conversations with timber purchasers, and then generated paperwork to support its assertion that the effects of the 2020 fires were insignificant. *See* Ptfs. Op. Br. at 25-26. This is precisely why courts within the Ninth Circuit have allowed consideration of these deliberative materials: they contain the "smoking gun" of arbitrary agency decision-making. *Desert Survivors*, 231 F. Supp. 3d at 382.

In any case, *Jefferies* and *Save the Colorado* are not relevant here because the agency has not yet produced an administrative record. In both of those cases, the agency had already produced an administrative record, and therefore enjoyed a "presumption of regularity." *Jeffries*, 2021 WL 3683879, at *13-14; *see also Save the Colo.*, 517 F. Supp at 898. This is not the case

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

here, where Defendant has yet to produce any record, and therefore enjoys no such presumption. *Oregon Natural Desert Ass'n v. BLM*, 531 F.3d 1114, 1142 (9th Cir. 2008) ("We cannot defer to a void.").

Furthermore, in *Save the Colorado*, the agency had previously claimed the documents at issue were "deliberative" and did not produce them in its FOIA response. 517 F. Supp at 901. Here, Defendant produced the documents in response to Plaintiffs' FOIA and is only now claiming they are privileged. Even under D.C. Circuit caselaw, these records are now properly part of the administrative record. *See Cty. of San Miguel*, 587 F. Supp. 2d at 75; *Eugene Burger Mgmt. Corp.*, 192 F.R.D. at 5. Defendant's argument is without any legal support, and this Court should consider the deliberative materials, which here "go to the heart of the question of whether an agency action was arbitrary and capricious." *Desert Survivors*, 231 F. Supp. 3d at 382.

### E.  The Court May Consider the DellaSala Declaration for Limited Purposes

Defendant also argues that the Court cannot consider the DellaSala Declaration because it is an extra-record declaration. Defs. Br. at 15. Defendant asserts that "[t]he information and opinions contained in the DellaSala declaration were not before or considered by the agency at the time its specialists conducted their expert assessments, and thus are not part of the Administrative Record for this case." *Id.* Plaintiffs recognize that generally this type of expert opinion, offered to weigh in on the merits of an agency decision, is not permitted. However, Plaintiffs explicitly offered this declaration merely to demonstrate that they take issue with many of the summary assumptions in the SIRs and the facially ridiculous assertion that Defendant considered the effects of the 2020 fires insignificant and therefore within the scope of NEPA documents finalized years before. *See* Decl. DellaSala, ¶ 2 (stating that "had the proposed changes to the project been available to the public I would have made the same assessment"); Ptfs. Op. Br. 30 ("[F]ailure of the agency to supplement NEPA precluded Plaintiffs and all others from challenging or raising competing scientific opinions and studies or on-the-ground information pertaining to the Forest Service's substantial changes to the project, contrary to NEPA's intent.").

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

Furthermore, the Ninth Circuit has held that a court can consider extra-record expert declarations under certain circumstances: "where admission of that evidence (1) is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) is necessary to determine whether 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (quoting *Lands Council v. Forester of Region One of the United States Forest Serv*., 395 F.3d 1019, 1030 (9th Cir. 2004)). Thus, a court is permitted "to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis." *Id.* Plaintiffs would ask this Court to consider the DellaSala Declaration to extent it provides a "background against which [this Court] can evaluate the integrity of the agency's analysis," to the extent needed to "explain technical terms or complex subject matter," and because the agency is relying upon documents not part of any produced administrative record.

Again, Plaintiffs believe that reliance on the DellaSala Declaration, while permitted, is not necessary here because it was proffered to demonstrate that Plaintiffs would have provided scientific evidence to contradict the unsupported assumptions made by agency if it had been given the opportunity to comment or object. Given the other clear markers of arbitrary agency decision-making and unreasonable and irrational conclusions, the Court does not need to rely on the DellaSala Declaration.

## II.      **Plaintiffs will suffer irreparable harm absent a preliminary injunction**

Defendant acknowledges that Plaintiffs have alleged an interest in the burned portions of Hwy 46, but argues that the "Project impacts only a fraction of this habitat, and Plaintiffs' members have ample opportunity to visit and experience the burned unharvested forest areas they have 'particular affection for[.]'" Defs. Br. at 13 (citing Ptfs. Op. Br. at 31. This exact argument has been rejected by the Ninth Circuit. *Cottrell*, 632 F.3d at 1135. In *Cottrell*, the Forest Service "argue[d] that because [plaintiffs] can 'view, experience, and utilize' other areas of the forest, including other fire-damaged areas that are not part of the Project, they are not

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

harmed by logging in the Project." *Id.* The court held that "[t]his argument proves too much. Its logical extension is that a plaintiff can never suffer irreparable injury resulting from environmental harm in a forest area as long as there are other areas of the forest that are not harmed. The Project will prevent the use and enjoyment by [plaintiffs] of 1,652 acres of the forest. This is hardly a *de minimus* injury." *Id.* Plaintiffs here use and enjoy the "areas subject to logging." This is "actual and irreparable injury," which satisfies the "likelihood of irreparable injury" requirement articulated in *Winter.* 555 U.S. at 21-23.


III.    **The Balance of Equities and Public Interest Tip Sharply in Plaintiffs' Favor**

   A.   **The Freres, Harrison and Blankenship declarations should be disregarded or accorded minimal weight in the balance of equities.**

   In assessing the balance of harms for the purposes of preliminary relief, a court "must balance the competing claims of injury and must consider the effect on *each party* of the granting or withholding of the requested relief." *Winter* at 24 (citation omitted) (emphasis added). Here, Defendant has submitted three declarations from non-party timber executives (see ECF 22-5, 22-6 and 22-7). The Court should disregard these declarations as irrelevant or accord them minimal weight with respect to the balance of equities.[7] If these timber companies had wished to assert their interests and harms, they could have intervened in this action.

   B.   **The Harms to Plaintiffs Outweigh the Alleged Harms to Defendant and the Public Interest Inquiry Tips Sharply in Plaintiffs' Favor**

   In contrast to the definite, irreparable harm to Plaintiffs and their members, there will be no irreparable harm to the Forest Service if an injunction issues.  In terms of balancing economic harm, "the Government's economic loss cannot be considered compelling if it is to be gained in contravention of federal law." *Wilderness Soc'y v. Tyrrel*, 701 F. Supp. 1473, 1491 (E.D. Cal. 1988); *see also Seattle Audubon Soc'y v. Evans*, 771 F.Supp. 1081, 1096 (W.D. Wash. 1991),

---

[7] Notably, these declarations do provide support for Plaintiffs' argument that supplementation was required as a result of changed circumstances following the fire. See ECF 22-5, ¶¶ 11, 15 ("the impacts from the fire have affected the merchantability, economic feasibility, and safety of logging those units."); ECF 22-9, ¶ 16 ("The 2020 Labor Day Fires significantly impacted the private land timber supply.").

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

*aff'd*, 952 F.2d 297 (9th Cir. 1991) (explaining that unlike permanent environmental harm, "economic effects of an injunction are temporary and can be minimized in many ways"). Additionally, the public interest factor favors Plaintiffs' injunction request. There is a "public interest in preserving nature and avoiding irreparable environmental injury," in "careful consideration of environmental impacts before major federal projects go forward," and in "suspending such projects until that consideration occurs 'comports with the public interest.'" *Cottrell*, 632 F. 3d at 1138 (citations omitted).

Although economic losses are given some weight in the process of balancing the equities, they are frequently outweighed by environmental, cultural, and dignitary interests, particularly where the economic losses are temporary. *See S. Fork Band Council v. U.S. Dep't of Interior*, 588 F.3d 718, 728 (9th Cir. 2009) (affirming injunction under NEPA and APA where environmental effects of mining were not adequately studied and mitigation measures not adequately considered, and principal hardship to the project developer was "economic" and "may for the most part be temporary"); *see also Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1125 (9th Cir. 2005) (stating that "when environmental injury is sufficiently likely, the balance of harms [versus 'concrete' 'financial hardship'] will usually favor the issuance of an injunction to protect the environment") (citations and internal quotation marks omitted).

Moreover, any harm articulated by Defendant "must consider only the portion of the harm that would occur while the preliminary injunction is in place, and proportionally diminish total harms to reflect only the time when a preliminary injunction would be in place." *League of Wilderness Defenders/Blue Mts. Biodiversity Project v. Connaughton*, 752 F.3d 755, 765 (9th Cir. 2014). The alternative is permanent environmental harm to Plaintiffs. *See id.* (the "harms [Plaintiffs] face are permanent, while the intervenors face temporary delay"). Thus, while the Forest Service and its contractor(s) may stand to lose money if Plaintiffs' request is granted, the "loss of anticipated revenues … does not outweigh the potential irreparable damage to the environment." *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1177 (9th Cir. 2006). If the type of environmental injury Plaintiffs will suffer in this case "is sufficiently likely … the balance of harms will usually favor the issuance of an injunction to protect the environment."

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION- 19

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987).

As to the public interest, "[t]he public interest is served by compliance with the APA." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). And the public has an interest in preventing the Forest Service from acting in a manner inconsistent with the applicable law. "This invokes a public interest of the highest order: the interest in having government officials act in accordance with the law." *Seattle Audubon Society*, 771 F. Supp. at 1096; *see also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1125 (9th Cir. 2002) (noting that in actions to protect the environment, "the public's interest in preserving precious, unreplenishable resources must be taken into account in balancing the hardships").

The Forest Service here is not trying to mitigate economic harms from the fires as its claims, Defs. Br. at 32 ("the purchasers have already experienced substantial losses from the 2020 fires, including destroyed logs and damaged equipment"); it is trying to capitalize on the burned timber. Again, the agency here would generate more timber volume from these new salvage logging projects than the original projects that covered many more acres. *See* Ptfs. Op. Br. 22-23 (citing Ex. H at 59)[8]. The Willamette National Forest is anticipated to log over 20,000 acres via other nearby salvage logging projects. Darzen Decl. ¶ 3. Bureau of Land Management Districts are running into annual volume caps with salvage logging projects alone. *Id.* Defendant admits that "[t]imber products are in high demand," which means that lumber prices are high. ECF 13 at 41. 2021 is going to be a windfall year for both federal land management agencies and the timber industry. Plaintiffs want to ensure that the agency is at the very least considering and disclosing to the public all the cumulative, detrimental effects on water quality, imperiled species, and future fire hazard and risk while the money is being counted, because it is the public that is going to pay for this industry gain going forward.

For these reasons, Plaintiffs' irreparable harm outweighs that of Defendant and its contractor(s), and there is a compelling public interest in issuing an injunction.

---

[8] Citations to Plaintiffs' Opening Brief (ECF 13) and Defendant's Response Brief (ECF 22) are to the brief page numeration, not the ECF pagination.

*Crag Law Center*
*3141 E Burnside Street*
*Portland, Oregon 97214*
*Tel. 503-525-2725*

**CONCLUSION**

To protect Plaintiffs from irreparable harm, Plaintiffs respectfully request this Court preliminarily enjoin the imminent logging in the Hwy 46 and Lang Dam project areas.

Respectfully submitted this 2nd day of November, 2021.

*/s/ Nicholas S. Cady*
Nicholas S. Cady (OSB # 113463)
Cascadia Wildlands
P.O. Box 10455
Eugene, Oregon 97440
Tel: 541-434-1463
Email: nick@cascwild.org

Meriel L. Darzen (OSB # 113645)
Crag Law Center
3141 E. Burnside Street
Portland, Oregon 97214
Tel: 503-525-2725
Email: meriel@crag.org

*Attorneys for Plaintiffs*